# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

THANH NGUYEN,

Petitioner,

v.

J. HARTLEY,

Respondent.

______________________________________/

1:07-cv-01837 OWW DLB (HC)

FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS

[Doc. 2]

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

BACKGROUND

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation (CDCR) pursuant to a conviction by jury on April 26, 1990, of second degree murder with use of a firearm. (Exhibit A, Abstract of Judgment, attached to Answer.) Petitioner was sentenced and is serving an indeterminate term of seventeen years to life in prison. (Id.) Petitioner became eligible for parole in 2000.

In the instant petition, Petitioner does not challenge the constitutional validity of his conviction and sentence; rather, he challenges the Board of Prison Hearings (BPH) finding of unsuitability for parole on May 3, 2006. (Exhibit B, to Answer.)

On September 12, 2006, Petitioner filed a petition for writ of habeas corpus in the Orange County Superior Court challenging the sufficiency of the evidence in denying him parole.

(Exhibit C, to Answer.) The petition was denied in a reasoned decision on September 28, 2005. (Exhibit D, to Answer.)

Petitioner then filed a petition in the California Court of Appeal, which was summarily denied on January 11, 2007. (Exhibits E & F, to Answer.)

Thereafter, on January 22, 2007, Petitioner filed a petition for review in the California Supreme Court. (Exhibit G, to Answer.) The petition was summarily denied. (Exhibit H, to Answer.)

Petitioner filed the instant petition for writ of habeas corpus on or about November 20, 2007, in the United States District Court for the Central District of California. By order of December 3, 2007, the petition was transferred to this Court, and filed on December 17, 2007. (Court Doc. 2.)

Respondent filed an answer to the petition on April 8, 2008, and Petitioner filed a traverse on April 25, 2008. (Court Docs. 8, 9.)

STATEMENT OF FACTS[1]

On April 25, 1989, Mr. Tu Nguyen, the 33-year old victim and his friend, Mr. Thomas Chu, entered a Vietnamese restaurant in the Garden Grove area and sat at a table near Petitioner and his friend, co-defendant Hung Tran. Tran asked the victim what he was staring at and began cussing at the victim and his friend. Tran then approached the victim and attempted to hit him with a broken beer bottle. Petitioner then produced a handgun and fired three shots at the victim. The victim attempted to flee to the front door and collapsed. Co-defendant, Tran then walked over to the victim, kicked him, and asked if he was dead yet. The victim was pronounced dead the following morning. The autopsy revealed the cause of death was the result of two gunshot wounds to the back. There was no apparent relationship between the victim and Petitioner.

DISCUSSION

I. Standard of Review

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

[1] This information is derived from the transcript of the BPH's 2006 hearing, which was taken from the Probation Officer's report (Exhibit B, to Answer.)

of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

Petitioner is in custody of the California Department of Corrections pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petition is not challenging [her] underlying state court conviction.'").

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71, *quoting* 28 U.S.C. § 2254(d)(1). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Id.

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

"[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

Petitioner has the burden of establishing that the decision of the state court is contrary to or involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. See Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

II. Review of Petition

A parole release determination is not subject to all the due process protections of an adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural protections that particular situations demand). "[S]ince the setting of a minimum term is not part of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole board proceeding, the only process to which an inmate is entitled is: 1) the inmate must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; 3) if the inmate is denied parole, the inmate must be told why "he falls short of qualifying for parole," Id.; and 4) the decision of the Board must be supported by "some evidence" having an indicia of reliability. Superintendent, Mass. Correc. Inst. v. Hill, 472 U.S. 445, 455 (1985); Cato v. Rushen, 824 F.2d 703, 705 (9th Cir.1987).

"In Superintendent v. Hill, the Supreme Court held that 'revocation of good time does not comport with 'the minimum requirements of procedural due process,' unless the findings of the prison disciplinary board are supported by some evidence in the record.' 472 U.S. 445, 454 (1985), *quoting* Wolff v. McDonnell, 418 U.S. 539, 558 (1974)." Sass, 461 F.3d at 1128. In determining whether the "some evidence" standard is met, the Court need not examine the entire record, independently assess the credibility of witnesses, or re-weigh the evidence. Id. Rather, the Court must determine whether there is any evidence in the record that could support the conclusion of the disciplinary board. Id., *citing* Superintendent v. Hill, at 455-56. Although Hill involved the accumulation of good time credits, the same standard applies to parole, as both situations "directly affect the duration of the prison term." Id., *citing* Jancsek v. Oregon Bd. of Parole, 833 F.2d at 1390.

In making a determination whether an inmate is suitable for parole, the BPH is guided by the following regulations:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 Cal. Code Regs. §§ 2402(a) and (b).

In this case, with regard to the procedural protections outlined in Greenholtz, Petitioner was provided all that is required. Petitioner was given advance notice of the hearing, he was offered representation by counsel at the hearing, he was granted an opportunity to submit materials for the Board's consideration and an opportunity to be heard during the hearing, and he was provided a written decision explaining the reasons why parole was denied. See Answer, Exhibit 4.

At the 2006 parole hearing, the BPH relied primarily on the circumstances of Petitioner's commitment offense finding it was carried out in a cruel and callous manner and the motive was extraordinarily trivial or nonexistent, the unequivocal psychiatric reports expressing Petitioner had not come to terms with his crime and lacked sufficient insight, and concern regarding Petitioner's parole plans if deported to his native country of Vietnam. (Exhibit B, at 62-48-49, 79-87.)

With regard to the circumstances of the commitment offense, the BPH found that it was carried out in an especially cruel and callous manner, as the victim was shot in the back as he was trying to escape from the altercation.[2] It was done merely because Petitioner's codefendant felt

---

[2] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c)(1) sets forth circumstances tending to demonstrate unsuitability for parole regarding the committed offense. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style

he was being starred at, and the victim was approached with a broken beer bottle then shot at three times by Petitioner, two shots in the back killing him. The motive for the crime was "extraordinarily trivial" or nonexistent. Petitioner had no connection or prior relationship with the victim and he was merely a stranger who by happenstance was eating at the same restaurant. The BPH stated that it could not "understand the reason for [Petitioner's] behavior, and to that end, [it could] only assume that there's more than meets the eye here." (Exhibit B, at 80.) Based upon these circumstances, "some evidence" supports the BPH's finding that the circumstances of the commitment offense demonstrate that Petitioner presents an unreasonable danger to public safety if released.

The BPH also considered the unfavorable psychological reports which opined that Petitioner had not accepted full and complete responsibility for the crime. Specifically, Dr. Schroeder opined that Petitioner "has not come to terms with his crime with the context of his history, . . ., in his life. Highly unlikely that a person who has a minimal history of drinking would have a blackout from alcohol. . . . Mr. Nguyen needs to own his crime in order to move forward." (Exhibit B, at 48.) In addition, Dr. Mura performed a series of tests and evaluation, and concluded that "during the evaluation the inmate appears to be gaining insight, but was still unable to explain his personal motivations for the crime, except for to repeat that he did not remember the details and was apparently intoxicated at the time." (Exhibit B, at 49.) This information was properly considered pursuant to § 2402(b) as the BPH is allowed to consider "[a]ll relevant, reliable information available to the panel" which includes information on a prisoner's "past and present mental state." See Cal. Code Reg. tit. 15, § 2402(b). Psychological reports are relevant evidence of which the Board is allowed to review and rely on in determining whether a prisoner is suitable for parole. Rosa v. Nielsen, 428 F.3d 1229, 1232-1233 (9th Cir.

---

murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

2005) (per curiam).

In addition, the BPH noted that although Petitioner demonstrated solid parole plans for release in the United States, an INS hold is in place and Petitioner had not demonstrated concrete plans for return to his native country of Vietnam. Cal. Code Reg. tit. 15, § 2402(d)(8). Petitioner did not present any documentation for any plans to return to Vietnam such as employment, housing, etc. (Exhibit B, at 81-82.) Section 2402(d)(8) states that a prisoner may be suitable for release if he "has made realistic plans for release or has developed marketable skills that can be put to use upon release." The BPH's concern appears legitimate given the INS hold and Petitioner's expressed desire is to return to Vietnam.

The BPH noted that the District Attorney opposed Petitioner's release. Although the District Attorney's opposition is not, by itself, sufficient to support a finding that an inmate is unsuitable, it can and was in this instance considered as part of the overall finding. Cal. Pen. Code § 3042(a) and (f)(3), and Cal. Code Reg. tit. 15, § 2402(b).

In addition, the BPH properly considered the factors supporting Petitioner's release and characterized his programming as "exemplary." Petitioner completed four vocations including, auto body, machine shop, air-conditioning refrigeration, and plumbing. (Exhibit B, at 84.) Petitioner was also commended for participating actively in AA and NA, conflict and anger resolution, secretary for MAC, and volunteer fundraisers such as the walk-a-thon in San Diego. (Exhibit B, at 84; Cal. Code Reg. tit. 15, § 2402(d).) Petitioner also received high marks from staff and officers with regard to his behavior in the institution. (Exhibit B, at 84-85.) However, on balance, these positive aspects did not outweigh the factors of unsuitability.

In addition, Petitioner contends that the BPH cannot continue to rely solely on the circumstances of his commitment offense in denying parole. Petitioner's claim is without merit. The Court acknowledges that the Ninth Circuit has stated "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs v. Terhune. 334 F.3d 910, 916-917 (9th Cir. 2003). In Sass v. California Board of Prison Terms, 461 F.3d 1123 (9th Cir. 2006), the Ninth Circuit held that it

was not a per se due process violation if the Board determines parole suitability based solely on the unchanging factors of the commitment offense and prior offenses. Sass, at 1129 (prisoner's commitment offenses in combination with prior offenses amounted to some evidence to support the Board's denial of parole). In Irons v. Carey, 505 F.3d 846, as amended, (July 13, 2007), the Ninth Circuit again upheld the denial of parole based on the prisoner's commitment offense and prior criminal history, but acknowledged the continuing validity of the holding in Biggs, and finding that relief for Irons was foreclosed by Sass. The Court pointed out that in the cases where it previously found that the denial of parole based solely on the commitment offense withstood a due process challenge, the prisoners had not yet served the minimum number of years for which they were sentenced. Irons, at 853-854. In the instant case, at the time of the 2006 parole hearing, Petitioner had only been incarcerated for just under 16 years of his 17 years to life sentence. (See Exhibit B, at 1.) Thus, even if this was the sole basis of the BPH's denial, the concerns expressed in Biggs and its progeny are not present here, and "some evidence" supports the BPH's finding that the circumstances of the commitment offense demonstrate that Petitioner presently poses an unreasonable risk to public safety.

Petitioner contends that the BPH is requiring him to admit his crime "in a particular manner" based on the BPH's concern that there was more to the story than meets the eye and he was not being truthful. The BPH did not require Petitioner to admit to his crime in any particular fashion; rather, the BPH expressed its concern that Petitioner had not fully explored the reasoning behind his commitment offense to find that he no longer poses an unreasonable risk to public safety and will not relapse. Section 2402(d)(3) states that a relevant circumstance which tends to indicate present parole suitability is a showing that the prisoner "understands the nature and magnitude of the offense." Cal. Code Regs., tit. 15 § 2402(d)(3); see also Cal. Code Regs., tit. 15 § 2042(b). To this end, the BPH stated that Petitioner "need[s] to crawl inside of [his commitment offense], and you need to be able to sit in front of a Panel and tell the tru[th] because I don't think you are. Neither one of us think you are telling us the truth about what really happened that day, neither do the two psychiatrists. And that's a scary thought. It means at any time anybody can walk into a restaurant and have dinner with a friend or family and fear

being shot because somebody had too much to drink. It doesn't make sense to me." (Exhibit B, at 85-86.) The BPH's concern regarding Petitioner's credibility appears legitimate given that he submissively brushed the crime off solely to his immaturity and alcoholic state, and denied his involvement in the crime for 10 years. (Exhibit B, at 52, 57.) In addition, as stated by the Orange County Superior Court:

> [T]he BPH pointed to its many "unanswered questions" including whether Petitioner had any gang involvement, why he would have a loaded gun in a restaurant, and why he would shoot a perfect stranger. Thus the BPH's conclusion was supported by factors beyond the minimum elements of second degree murder.

(Exhibit D, at 3.)

The BPH's finding was further supported by both psychiatric reports which expressed concern that Petitioner lacked understanding into the causative factors and his culpability for the unprovoked shooting of a unarmed stranger as he was attempting to flee. (Exhibit B, at 48-49.) Simply stated, the bulk of information before the BPH including the clear lack of motivation, lack of explanation of his involvement, and denial of the crime for 10 years, provide some evidence to support the BPH's finding Petitioner has not fully addressed the causative factors for his violent offense and his resulting culpability, and therefore remains an unpredictable threat to public safety.

Lastly, with regard to Petitioner's claim that California Penal Code section 3041 is unconstitutional because it deprives him of a jury trial determination as to whether the circumstances of his commitment offense are more than minimally necessary to sustain a conviction, it too is without merit.

Respondent initially argues that Petitioner has not exhausted this claim because it was not presented to the state courts for review. A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies. 28 U.S.C. § 2254(b)(1). A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court. Picard v. Connor, 404 U.S. 270, 276, 92 S.Ct. 509, 512 (1971); Johnson v. Zenon, 88 F.3d 828, 829 (9th Cir. 1996). A federal court will find that the highest

state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis. Duncan v. Henry, 513 U.S. 364, 365, 115 S.Ct. 887, 888 (1995) (legal basis); Kenney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 1719 (1992) (factual basis).

Here, Petitioner filed identical petitions in the all three state courts, as he did in the instant federal petition. (See Exhibits, C, E, & G.) However, in the instant petition, Petitioner added a fifth claim challenging the constitutionality of California Penal Code section 3041. Petitioner did not raise this claim in the state court proceedings, and the California Supreme Court did not have the opportunity to review such claim. Accordingly, this claim is unexhausted.

In any event, the claim fails on the merits. Petitioner relies on the United States Supreme Court's holding in Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007), which held that the middle term in California's determinate sentencing law is the relevant statutory maximum and the imposition of the upper sentence violated the defendant's Sixth and Fourteenth Amendment right to a jury trial because it "assigns to the trial judge, not the jury, authority to find facts that expose a defendant to an elevated 'upper term' sentence." Id. at 860, 868. There is simply no entitlement under the sixth amendment to a jury trial in regard to the facts underlying the BPH's decision. McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002). Rather, the BPH's findings must be supported by "some evidence" bearing "some indicia of reliability." Id. Cunningham is not applicable to the parole determination in this case because the BPH did not impose a sentence that is beyond the statutory maximum sentence.

Nor is Petitioner entitled to a jury trial under California Penal Code section 3041(b), which states "[t]he panel or the board, sitting en banc, shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." As defined by statutory law, the BPH must consider a number of factors in considering an inmate's suitability for release on parole, and there is no entitlement to a jury trial for such determination. See Cal. Code Regs., tit. 15 § 2402.

In sum, the Board thoroughly considered all relevant evidence in this case and carefully balanced and assessed the various factors. The BPH's findings that Petitioner presently poses an unreasonable risk to public safety were supported by at least "some evidence" and it cannot be said that the state court's resolution of Petitioner's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence before the state court."

RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2. The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:** **September 2, 2008**

**/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE